IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| RONALD RIDER,<br><br>      Plaintiff,<br><br>v.<br><br>PPG INDUSTRIES, Inc.; PPG INDUSTRIES,<br>Inc. MASTER WELFARE BENEFIT PLAN<br>And PPG INDUSTRIES, Inc. RETIREMENT<br>PLAN C,<br><br>      Defendants. | Civil Action No. 21-1819-GBW |

Brian E. O'Neill, ELLIOTT GREENLEAF, P.C., Wilmington, Delaware;

 *Counsel for Plaintiff*

Jared Thomas Green, SEITZ, VAN OGTROP & GREEN, P.A., Wilmington, Delaware; Lindsay Neinast, LITTLER MENDELSON, PC, Washington, D.C.

 *Counsel for Defendants*

**MEMORANDUM OPINION**

October 18, 2022
Wilmington, Delaware

_[signature]_
_____
GREGORY B. WILLIAMS
UNITED STATES DISTRICT JUDGE

Plaintiff Ronald Rider ("Rider") filed this action against Defendants PPG Industries, Inc. ("PPG"), the PPG Industries, Inc. Welfare Plan, and the PPG Industries, Inc. Retirement Plan C (collectively, "Defendants") to obtain retiree health and pension benefits that Rider alleges PPG promised to him (the "Complaint," D.I. 1). Defendants argue that the Employee Retirement Income Security Act (ERISA) preempts Counts III, IV, and V of the Complaint and move to dismiss those Counts with prejudice (the "Motion"). D.I. 8. Since Rider alleges that he bargained for enhanced retirement healthcare and pension benefits, the Court finds that ERISA does not preempt Counts III and IV. ERISA does preempt Count V. The Motion is fully briefed, D.I. 8-1; D.I. 9; D.I. 12; D.I. 14-1,[1] and no hearing is necessary.

I. **BACKGROUND**[2]

PPG first hired Rider, a resident of Dover, Delaware, on March 27, 1989, and PPG terminated Rider in January 2019. D.I. 1 ¶¶ 19–20. PPG provides retiree healthcare benefits via the PPG Welfare Plan and provides pension benefits via the PPG Retirement Plan C. D.I. 1 ¶¶ 10–14; 29 U.S.C. § 1002(1), (2), (3). Rider contends he was eligible for both benefit types at the time of his termination. D.I. 1 ¶¶ 6, 26. After Rider obtained new work at Hirsch Industries, near Dover, Rider applied for, interviewed for, and was offered a job as operations manager of PPG's Mount Laurel, New Jersey location. D.I. 1 ¶¶ 22–25. Rider conditioned acceptance of his employment offer on the reinstatement of both "his prior eligibility for retiree pension benefits

---

[1] On April 11, 2022, Rider filed a Request for Leave to File a Sur-Reply to Defendants' Reply Brief, and Rider represented that Defendants did not object to his motion. D.I. 14. Defendants have not filed any objection since. Thus, the Court grants Rider's motion.

[2] Under Rule 12(b)(6), the Court must accept as true all factual allegations in the Complaint and view those facts in the light most favorable to the plaintiff. *See Fed. Trade Comm'n v. AbbVie Inc*, 976 F.3d 327, 351 (3d Cir. 2020).

1

. . . as if his employment had not ended in 2019" and "his prior eligibility for company-provided retiree healthcare . . . ." D.I. 1 ¶ 26. On January 7, 2020, PPG Human Resources Manager Barbara Mraz "informed [Rider] that she would research" "whether his retiree healthcare and retiree pension benefits would be reinstated if he were rehired by PPG." D.I. 1 ¶¶ 28, 30. On January 10, 2020, Mraz emailed Rider that,

> should you become employed with PPG by January 31, 2020[,] your employment status will be re-instated as though there was not a break in service, to the same benefit levels you had prior to outplacement of PPG in January 2019. These benefits include all healthcare, retirement plan and retirement health care.

D.I. 1 ¶ 33 (internal quotation marks omitted). In reliance on that representation, Rider "quit his job at Hirsch Industries and accepted the position with PPG at its Mount Laurel facility[,]" beginning on January 30, 2020. D.I. 1 ¶ 36–37.

On November 9, 2020, a PPG benefits department employee informed Rider that he was ineligible for retiree healthcare benefits, and Mraz agreed to "'reach out to them and explain where I got that information. I will pursue this.'" D.I. 1 ¶¶ 41–43. On December 21, 2020, Mraz "verbally informed" Rider of his ineligibility "for retiree health coverage[,]" but she provided no "information regarding the status of Mr. Rider's pension benefits . . . ." D.I. 1 ¶ 47. PPG Plan Administrator Karen Rathburn informed Rider that he would not be permitted to participate in his retirement plan "as if he had not been terminated in 2019 (i.e., receiving credit for the additional year of service and the higher salary of his current position)." D.I. 1 ¶¶ 53–54. Between January 29, 2021 and September 8, 2021, Rathburn denied Rider's appeals regarding reinstatement of both his retiree healthcare benefits and retiree pension benefits. D.I. 1 ¶¶ 48–56.

Rider's claims sound in five counts: violation of ERISA § 502(a)(1) as to Rider's retiree healthcare benefits (Count I), violation of ERISA § 502(a)(3) as to Rider's retiree healthcare and pension benefits (Count II), breach of contract (Count III), promissory estoppel (Count IV), and

2

negligent misrepresentation (Count V). D.I. 1 ¶¶ 63–118. Count III alleges that Mraz's email was an offer of retirement healthcare and income plan (i.e., pension)[3] benefits, that Rider's acceptance created a contract, and that "PPG has anticipatorily breached the parties' contract . . . ." D.I. 1 ¶¶ 91–97. Count IV alleges that Mraz's email was a "clear and unambiguous" "promise to [Rider,]" that Rider acted in reliance on that promise, and that Rider suffered damages when he was not provided retirement healthcare and pension benefits as promised. D.I. 1 ¶¶ 100–107. Count V alleges that Mraz's email was a PPG representation made "without reasonable care" and that Rider relied on the PPG representation to his detriment when he accepted his employment offer. D.I. 1 ¶¶ 109–115. Each of Counts III, IV, and V, brought against PPG, alone, seeks retiree healthcare and pension benefits. D.I. 1 ¶¶ 90–118. The parties agree that each Count arises under state common law, D.I. 8-1 at 2; D.I. 9 at 1, but neither party specifies which state's law applies. Defendants now move to dismiss Counts III, IV, and V as "duplicative of [Rider's] claim under ERISA § 502(a)(3) and [] preempted by ERISA." D.I. 8-1 at 5.

## II.   LEGAL STANDARD

To state a claim on which relief can be granted, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Such a claim must plausibly suggest "facts sufficient to 'draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Doe v. Princeton Univ.*, 30 F.4th 335, 342 (3d Cir. 2022) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) (citing *Bell Atl. Corp. v.*

---

[3] The Complaint refers throughout to retirement "health" and "pension" benefits, *see, e.g.*, D.I. 1 ¶¶ 24, 36, 38, but then refers in Counts III, IV, and V to "retirement healthcare benefits" and "retirement income plan benefits[,]" *see* D.I. 1 ¶¶ 95–96, 105–06, 116–17. The Court understands the Complaint to use "income plan" to refer to a pension plan and, thus, will generally refer to the "income plan" as a "pension."

*Twombly*, 550 U.S. 544, 557 (2007)). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Klotz v. Celentano Stadtmauer & Walentowicz LLP*, 991 F.3d 458, 462 (3d Cir. 2021) (quoting *Iqbal*, 556 U.S. at 678). The Court disregards "'legal conclusions . . . supported by mere conclusory statements.'" *Princeton Univ.*, 30 F.4th at 342 (quoting *Davis v. Wells Fargo*, 824 F.3d 333, 341 (3d Cir. 2016)).

"'The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'" *In re Avandia Mktg., Sales Pracs. & Prod. Liab. Litig.*, 804 F.3d 633, 638 (3d Cir. 2015) (citation omitted). "A motion to dismiss [under Rule 12(b)(6)] 'may be granted only if, accepting all well-pleaded allegations in the complaint as true, and viewing them in the light most favorable to plaintiff, plaintiff is not entitled to relief.'" *McCrone v. Acme Markets*, 561 F. App'x 169, 172 (3d Cir. 2014) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997)).

### III.  DISCUSSION

PPG argues that the premise of Counts III, IV, and V is PPG's alleged promise that Rider "would have retiree benefits upon his reemployment. These claims are, therefore, duplicative of his claim under ERISA § 502(a)(3) and are preempted by ERISA." D.I. 8-1 at 5. Rider responds that his claims are based on an independent and distinct "agreement with PPG regarding the terms of his employment," so his claims "are independent of ERISA." D.I. 9 at 1. The Court cannot, at this early stage in the proceedings, find that ERISA preempts Counts III and IV. The Court does, however, find that Count V is preempted.

A.      **The Factual Dispute as to the Nature of Rider's Communications with PPG**

The parties dispute whether Rider (i) bargained for reinstated retiree healthcare and pension benefits or (ii) inquired whether he would receive such benefits and received an incorrect answer. The Court, as it must, accepts the facts as Rider alleges them.

Defendants argue that "Rider's claim concerns whether PPG's interpretation of Mr. Rider's eligibility for benefits under the Plan was accurate." D.I. 12 at 2. Defendants make this assertion repeatedly in their briefing, *see* D.I. 8-1 at 5 (making this assertion twice); D.I. 12 at 1, 2, 3, 4 ("Rider's claim boils down to whether PPG misrepresented his eligibility for the [ERISA] Plan."), but they fail to point to specific alleged facts that support their position. Nevertheless, the Court finds that certain facts asserted in the Complaint do support Defendants' position. For example, Rider alleges that he "called and emailed . . . Mraz[] to *inquire whether* his retiree healthcare and retiree pension benefits would be reinstated[,]" and "Mraz *informed* [Rider] that she [i.e., Mraz] would research the question." D.I. ¶¶ 28, 30 (emphases added). Further, Mraz's January 10, 2020 email explains that Rider's "employment status will be re-instated" along with healthcare benefits, and Rider alleges that he "had an objectively reasonable expectation that Ms. Mraz was providing [Rider] with accurate *information* regarding his benefits." D.I. 1 ¶¶ 33, 35 (emphasis added). Indeed, Mraz was a human resources employee, rather than a PPG recruiter or supervisor, D.I. ¶¶ 26–27, performing research as to Rider's benefit eligibility. Thus, the Court could infer that Mraz sought to answer Rider's benefits inquiry—not to negotiate employment terms. Rider's Count V also alleges that PPG's "representation" of reinstated benefits was "made . . . in the course of [PPG's] business and . . . without reasonable care." D.I. ¶¶ 109–10. Based on Count V and these alleged facts alone, this case concerns Rider's inquiry as to his benefits status upon rehire.

5

However, Rider argues that Counts III, IV, and V "are based on [Rider]'s agreement with PPG regarding the terms of his employment . . . ." D.I. 9 at 1; *see* D.I. 14-1 at 1–2. Rider alleges that reinstatement of healthcare and pension benefits were "conditions for [Rider's] acceptance of the [rehire] position . . . ." D.I. 1 ¶ 26. Rider alleges he made these conditions clear to PPG's "Talent Acquisitions Personnel" and to Mraz. D.I. 1 ¶¶ 26, 29. Further, Mraz's January 10 email copied "the general manager of the Mount Laurel facility," and Rider alleges that "Mraz's inclusion of the Mount Laurel general manager in the communication" supported Rider's "objectively reasonable expectation . . . that Ms. Mraz's offer was binding on PPG . . . ." D.I. ¶¶ 34–35. Count III alleges that Mraz's email constituted an offer and that, once Rider accepted the offer and began work, PPG was bound to reinstate the benefits. D.I. ¶¶ 91–96. Count IV, similarly, alleges that Mraz's email was a promise and that, once Rider began work in reliance thereon, PPG should be held to its promise. D.I. ¶¶ 100–06.

In short, Rider alleges that he *negotiated* for reinstatement of benefits, not that he simply *asked* whether PPG's ERISA plan would provide for such benefits. While both parties could point to factual allegations that support their description of events, at the motion to dismiss stage, the Court must "'construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'" *AbbVie Inc.*, 976 F.3d at 351 (citation omitted). Discovery may reveal a different pattern of events, and Defendants may ask the Court to reevaluate its analysis at summary judgment.

B. **Whether ERISA Preempts Rider's Common Law Claims**

Since Count V rests on an alleged misrepresentation of Rider's benefit status, the Court finds that ERISA preempts Count V. However, ERISA does not preempt Counts III and IV because Rider alleges an independent agreement with PPG as to his retirement benefits.

6

"ERISA was enacted to protect the interests of participants in employee benefit plans and their beneficiaries." *McCann v. Unum Provident*, 907 F.3d 130, 143 (3d Cir. 2018) (cleaned up). Congress "ensure[d] that benefit plan administration was subject to a single set of regulations . . . to avoid subjecting regulated entities to conflicting sources of substantive law." *New Jersey Carpenters & the Trustees Thereof v. Tishman Const. Corp. of New Jersey*, 760 F.3d 297, 303 (3d Cir. 2014). The statute applies to employer-maintained employee benefit plans. *McCann*, 907 F.3d at 142. "Section 502(a) [] created a federal cause of action for [ERISA] plan beneficiaries and participants to recover benefits due under a plan or to enforce the terms of the plan." *Plastic Surgery Ctr., P.A. v. Aetna Life Ins. Co.*, 967 F.3d 218, 226 (3d Cir. 2020). Claims that "fall within the scope of [§ 502(a)] . . . are completely preempted." *Pryzbowski v. U.S. Healthcare, Inc.*, 245 F.3d 266, 272 (3d Cir. 2001).

Section 502(a) permits an ERISA plan participant to bring a civil action (i) "to recover benefits due to him under the terms of his [ERISA] plan" or (ii) "to obtain [] appropriate equitable relief . . . to enforce [provisions of the ERISA statute] or the terms of the [ERISA] plan . . . ." 29 U.S.C. §§ 1132(a)(1)(B), (a)(3)(B); *see Pell v. E.I. DuPont de Nemours & Co. Inc.*, 539 F.3d 292, 300 (3d Cir. 2008) (reciting the standard for "appropriate equitable relief"). "[A] claim is completely preempted . . . under ERISA § 502(a) only if: (1) the plaintiff could have brought the claim under § 502(a); *and* (2) no other independent legal duty supports the plaintiff's claim." *New Jersey Carpenters*, 760 F.3d at 303 (emphasis in original); *see also Maglioli v. All. HC Holdings LLC*, 16 F.4th 393, 410 n.11 (3d Cir. 2021) (same). "[A] legal duty is 'independent' if it is not based on an obligation under an ERISA plan, or if it 'would exist whether or not an ERISA plan existed.'" *New Jersey Carpenters*, 760 F.3d at 303 (citation omitted). "In other words, if the state law claim is not derived from, or conditioned upon the

7

terms of an ERISA plan, and nobody needs to interpret the plan to determine whether that duty exists, then the duty is independent." *Id.* (cleaned up).

The Second Circuit uses the same two-part test as the Third Circuit uses to determine whether § 502(a) completely preempts ERISA claims, and the Second Circuit has issued two instructive opinions. First, in *Stevenson*, the Second Circuit found that a breach of contract claim that arose from a promise to maintain an employee's benefits while he worked for an overseas affiliate was not preempted. *Stevenson v. Bank of New York Co.*, 609 F.3d 56, 60–61 (2d Cir. 2010). The court explained that the "defendants' asserted liabilities" derive "from a separate promise that references various benefit plans, none of which directly applies to [plaintiff] by its terms, as a means of establishing the value of that promise." *Id.* The court noted that the defendant company—not the ERISA plans—would have to pay damages and that the claims would not affect "the actual administration and funding" of the ERISA plans. *Id.* at 61. Second, in *Arditi*, when an ERISA plan beneficiary sued his former employer for failure to credit him with service time as promised in his employment agreement, the Second Circuit found the claims preempted because the ERISA plan (not the employment agreement) "was the basis for the claimed benefits." *Arditi v. Lighthouse Int'l*, 676 F.3d 294, 300 (2d Cir. 2012), as amended (Mar. 9, 2012). The Second Circuit distinguished *Stevenson* because, there, the plaintiff's rights arose "not from the [ERISA] plan, but from the independent agreement that gave [plaintiff] benefits even though [plaintiff] had no right to them under the plan." *Id.* at 300–01.

In the instant action, there is little dispute that Rider could bring his claims under ERISA. *See* D.I. 9 at 6–11 (focusing on PPG's independent legal duty). Counts III, IV, and V seek retiree healthcare and pension benefits. D.I. 1 ¶¶ 95–96, 105–06, 116–17. Rider admits he can seek retiree health benefits under ERISA because his Complaint alleges that his prior service

8

entitles him to such benefits under the ERISA plan's terms. D.I. 1 ¶¶ 67–72. Count II seeks retiree healthcare and pension benefits under the same equitable estoppel theory that Rider advances in Count IV, and Count II directly alleges "material[] misrepresent[ation,]" as does Count V. D.I. 1 ¶¶ 75–79, 82, 102–07, 112. The same conduct also underlies Counts II through V. *See* D.I. 1 ¶¶ 74, 79, 90–91, 99–100, 108–09. Thus, Rider can bring his claims under ERISA.

The next question is whether an independent legal duty supports Rider's claim. Counts III and IV seek retiree healthcare and pension benefits that PPG's ERISA plan would have to pay to Rider. *See* D.I. 1 ¶¶ 95–96, 105–06. Thus, unlike in *Stevenson* and similar to *Arditi*, the ERISA plan—not PPG—would have to pay the damages sought. *But see* D.I. 1 at 18 (seeking compensatory damages "[i]n the alternative"). Count IV brings the same equitable estoppel claim under common law that Count II brings under ERISA § 502(a)(3). *Compare* D.I. 1 ¶¶ 100–04 (reciting a promise to reinstate retiree healthcare and pension benefits and reasonable reliance thereon), *with* D.I. 1 ¶¶ 80–82 (same). However, neither finding answers whether Counts III and IV are based on a duty independent of ERISA that PPG owed Rider. *See Aetna Health Inc. v. Davila*, 542 U.S. 200, 210 (2004) (asking whether any "legal duty (state or federal) independent of ERISA or the plan terms is violated"); *Caivano v. Prod. Workers Union Loc. 148*, 2014 WL 2931183, at *7 (D.N.J. June 30, 2014) (not finding preemption although the ERISA plan was "the source of the benefits" sought); *S.M.A. Med., Inc. v. UnitedHealth Grp., Inc.*, 2020 WL 1912215, at *8 (E.D. Pa. Apr. 20, 2020) (not finding preemption although "the plaintiff's claims are derived from ERISA plans and exist only because of those plans").

At least at this early stage of the proceedings, Rider can show that a legal duty independent of § 502(a) supports Counts III and IV. Neither Count is "derived from, or conditioned upon the terms of an ERISA plan, and nobody needs to interpret the plan to" decide

9

if PPG had a contract with Rider or made a promise to Rider. *New Jersey Carpenters*, 760 F.3d at 303 (cleaned up). A factfinder need only determine, as to Counts III and IV, whether PPG offered or promised to reinstate Rider's retiree healthcare and pension benefits "'as though there was not a break in service, to the same benefit levels [he] had prior to outplacement in January 2019.'" D.I. 1 ¶¶ 95–96, 105–06. In other words, Rider's "right to recovery [under Counts III and IV], if it exists, depends entirely on the operation of third-party contracts . . . that are independent of the [ERISA] Plan []." *Pascack Valley Hosp. v. Loc. 464A UFCW Welfare Reimbursement Plan*, 388 F.3d 393, 402 (3d Cir. 2004), as amended (Dec. 23, 2004).

On the contrary, Count V alleges a misrepresentation of the terms of PPG's ERISA plan, so ERISA preempts Count V. Count V recites that PPG "made [a] representation" to Rider, via Mraz's email, that "[Rider's] employment status [would] be reinstated as though there was not a break in service, to the same benefit levels [Rider] had prior to outplacement of PPG in January 2019." D.I. 1 ¶ 109 (internal quotation marks omitted). Count V further alleges that Mraz's email was sent in the course of PPG's business, that the representation was "material to [Rider]'s decision to become re-employed with PPG[,]" that Rider "justifiably relied upon PPG's representation to his detriment[,]" and that the representation was made "without reasonable care." D.I. 1 ¶¶ 109–14. The Complaint also alleges that Rider was a participant in PPG's ERISA plan at the time of Mraz's representation, *see* D.I. 1 ¶ 9, and individuals responsible for ERISA plans have a "'duty not to misinform'" plan participants, *In re Unisys Corp. Retiree Med. Benefits ERISA Litig.*, 579 F.3d 220, 228 (3d Cir. 2009) (citation omitted) (discussing fiduciary duties under ERISA). To find for Rider, a factfinder would have to find that Mraz made a misrepresentation, and such a finding is conditioned, at least in part, "upon the terms of an ERISA plan . . . ." *New Jersey Carpenters*, 760 F.3d at 303 (cleaned up). Rider fails to

10

plausibly allege a claim for material misrepresentation that asserts a duty independent of that owed to an ERISA plan participant under the ERISA plan's terms or the ERISA statute.

Again, Section 502(a) preempts a state law claim only if "(1) the plaintiff could have brought the claim under § 502(a); *and* (2) no other independent legal duty supports the plaintiff's claim." *Id.* (emphasis in original). While Rider could bring Counts III, IV, and V under ERISA, an independent legal duty exists as to Counts III and IV. Thus, § 502(a) does not preempt those claims. An independent legal duty does not exist as to Count V. Thus, § 502(a) does preempt Count V.

### IV.   CONCLUSION

For the above reasons, the Court denies Defendants' motion to dismiss Counts III and IV. The Court grants Defendants' motion to dismiss Count V.

Federal Rule of Civil Procedure 15(a)(2) requires the Court to "freely give leave [to amend] when justice so requires." But dismissal with prejudice for futility is appropriate when "'the complaint, as amended, would fail to state a claim upon which relief could be granted.'" *Travelers Indem. Co. v. Dammann & Co.*, 594 F.3d 238, 243 (3d Cir. 2010) (citation omitted); *see Knowles v. Temple Univ.*, 2022 WL 3037258, at *1 (3d Cir. Aug. 2, 2022). Here, no claim for misrepresentation that is consistent with the facts in Count V of the Complaint could invoke a duty independent of the ERISA plan's duty to its participants. Therefore, the Court dismisses Count V with prejudice.

The Court will issue an Order consistent with this Memorandum Opinion.

11